# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

FARM BUREAU MUTUAL INSURANCE
COMPANY, a foreign corporation,

       Plaintiff,

vs.                                                                                          No. CV 05-1080 JB/WPL

CADEN JAMESON,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion for Summary Judgment, or, in the Alternative, for Certification to the New Mexico Supreme Court, filed May 23, 2006 (Doc. 14)("Defendant's Motion for Summary Judgment"); and (ii) the Plaintiff's Motion for Summary Judgment, filed May 30, 2006 (Doc. 16). As the parties agree that the material facts in this case are not in dispute, the Court must decide how the New Mexico Supreme Court, if presented with these issues, would decide the following issues: (i) whether New Mexico law required the Plaintiff, Farm Bureau Mutual Insurance Company ("Farm Bureau"), to obtain a signed written rejection of uninsured/under-insured motorist ("UM") coverage at levels equal to liability levels from the Defendant Caden Jameson's parents; and (ii) whether, if such was required, New Mexico law dictates that the policy in question be reformed to reflect UM coverage limits equal to the liability limits contained within that policy. The Court concludes: (i) that New Mexico law requires insurers to offer UM coverage at a level not less than that statutorily required and up to the level of liability coverage contained within a policy; (ii) that, if the insured rejects UM coverage in an amount equal to liability coverage, the insurer is required to obtain a signed, written rejection and include it within the policy

in some manner; and (iii) that an insurer's failure to do so requires the Court to read into a policy UM coverage equal to liability coverage.  The Court will therefore grant the Defendant's Motion for Summary Judgment.  The Court will also declare: (i) that Caden does not claim any medical coverage under Policy I, the Jamesons' policy; (ii) that the parties have reached settlement under Policy II, the policy held by the owner of the vehicle in which Caden was injured, and that there are no outstanding issues involving that policy; and (iii) that the parties agree that Farm Bureau will be entitled to offsets with respect to liability payments made to or on behalf of Caden.

## FACTUAL BACKGROUND

The parties do not dispute the facts.  See Initial Pre-Trial Report, filed January 17, 2006 (Doc. 12)("IPTR").  Farm Bureau is an Iowa corporation with its principal place of business in West Des Moines, Iowa.  See id. at #1. Caden Jameson is a resident of Lovington, New Mexico.  See id. at #2.  Farm Bureau issued a policy of automobile insurance in New Mexico to Caden's parents, Gary and Glenna Jameson ("Jamesons"), policy number 14351301, with effective dates of May 14, 2004 to May 14, 2005.  See id. at #3.

Caden was a resident relative under the policy at all material times; Caden is a Class I insured under the policy and is entitled to stack the coverages it contains.  See id. at #3 & #4.  The Jamesons never signed forms that specifically contained a written rejection of UM coverage or a written rejection of the stacking of UM coverage, but did sign an application that listed the following coverage limits, which subsequently appeared on the their declarations page: liability limits at $100,000 per person/$300,000 per occurrence; UM limits at $25,000 per person/$50,000 per occurrence; and medical payments limits at $5,000 per person/$25,000 per occurrence.  See id. at #5 & #6.  The policy at issue essentially renewed automobile coverages that began November 21, 1996

and that were renewed each year up to the May 14, 2004 renewal.  <u>See</u> Exhibits in Support of Motion for Summary Judgment, filed May 30, 2006 (Doc. 18), Application for Insurance, for coverage to be effective November 20, 1996, Exhibit A ("Application").

On or about November 28, 2004, Caden was a passenger in a vehicle, not covered under the Jameson's policy, that was involved in a single-car accident.  <u>See</u> IPTR at #11.  Caden sustained bodily injury.  <u>See</u> <u>id.</u>

## PROCEDURAL BACKGROUND

In his motion for summary judgment, Caden asks the Court to decide the amount of UM coverage to which he is entitled under his parents' policy.  <u>See</u> Memorandum in Support of Defendant's Motion for Summary Judgment, or, in the Alternative, for Certification to the New Mexico Supreme Court at 1-2, filed May 23, 2006 (Doc. 15)("Defendant's Memo in Support"). Farm Bureau contends that amount is $125,000, less any liability offsets.  <u>See</u> Memorandum in Support of Motion for Summary Judgment at 6, filed May 30, 2006 (Doc. 17)("Plaintiff's Memo in Support").  Farm Bureau arrives at the amount by stacking the stated $25,000 UM per person limits for each of the five vehicles covered under the Jamesons' policy.  <u>See</u> <u>id.</u>

Caden maintains that the amount of UM coverage to which he is entitled is $500,000.  <u>See</u> Defendant's Consolidated Response to Plaintiff's Motion for Summary Judgment and Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment at 2, filed June 23, 2006 (Doc. 20)("Defendant's Consolidated Response").  He arrives at that amount by stacking the stated liability limits for each of the vehicles covered under his parents' policy.  <u>See</u> <u>id.</u> at 2-3.  Caden contends that UM coverage at the liability limits must be read into the policy because his parents never signed a written rejection of UM coverage equal to the liability limits.  <u>See</u> <u>id.</u>

Caden bases his contention on the language of applicable statutory and regulatory provisions, N.M. Stat. § 66-5-301 and N.M. Code R. § 13.12.3.9, and the New Mexico Supreme Court's articulation of the policy that underlies them.  See id.  Farm Bureau argues, in response, that it had no obligation to obtain a specific written rejection of UM coverage equal to liability limits and attach it to the policy, because there was not and is not an express statutory or administrative requirement for such a document where, as here, the insureds elect to purchase UM coverage at the minimum amount the law mandates, and that, even if there was or is such a requirement, the Jamesons' policy applications and declarations page showing UM coverage at the minimum levels would constitute a sufficient written rejection of higher limits.  See Plaintiff's Response to Defendant's Motion for Summary Judgment or, in the Alternative, for Certification to the New Mexico Supreme Court at 2, filed June 12, 2006 (Doc. 19)("Plaintiff's Response").  Caden  also moves the Court, if it finds the New Mexico law on the matter to be unclear, to certify the interpretation of N.M. Stat § 66-5-301 to the New Mexico Supreme Court.  See Defendant's Memo in Support at 8-9.

Farm Bureau originally moved the Court to declare its and Caden's rights and obligations under Policies I and II.  See Complaint for Declaratory Judgment at 1-4, filed October 12, 2005 (Doc. 1).  At the present time, however, the Court need only determine at what limits UM coverage is due under the policy, because: (i) Caden does not claim any medical coverage under Policy I; (ii)  the parties have reached settlement under Policy II and  there are no outstanding issues involving that policy; and (iii) the parties agree that Farm Bureau will be entitled to offsets with respect to liability payments made to or on behalf of Caden.  See Defendant's Motion for Summary Judgment at 2 n.1, 3 n.2; Plaintiff's Motion for Summary Judgment at 1 n.1, n.2, 2 n.3.

## LAW REGARDING SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, togther with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party. Id. at 249-50.

Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988). The court may only consider admissible evidence when ruling on a motion for summary judgment. See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir.1985)(citing Fed. R. Civ. P. 56(e)).

If a defendant seeks summary judgment, it has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case." Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995). See Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000). Upon meeting that burden, the plaintiff must "identify specific facts that show the existence of a genuine issue of material fact." Id. "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Id. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue

for trial." Celotex Corp. v. Catrett, 477 U.S. at 324.

**RELEVANT PRINCIPLES OF STATUTORY INTERPRETATION
UNDER NEW MEXICO LAW**

In interpreting statutory provisions, a court's fundamental objective is to ascertain and give

effect to the apparent intent of the legislature. See Smith Mach. Corp. v. Hesston, Inc., 102 N.M.

245, 246, 694 P.2d 501, 502 (1985). Principles of statutory construction require a court to construe

a statute in a manner that will not frustrate its intended purpose or lead to an absurd result. See Gen.

Motors Acceptance Corp. v. Anaya, 103 N.M. 72, 76, 703 P.2d 169, 173 (1985). Courts should

avoid constructions that fail to attain rational and sensible results that bear directly on the purposes

that the legislature sought to achieve. See State ex rel. Klineline v. Blackhurst, 106 N.M. 732, 735,

749 P.2d 1111, 1114 (1988); Gen. Motors Acceptance Corp. v. Anaya, 103 N.M. at 76, 703 P.2d

at 173.

In discerning legislative intent, courts should rely primarily upon the plain meaning of the

language the legislature chose to use. Gen. Motors Acceptance Corp. v. Anaya, 103 N.M. at 76,

P.2d at 169. A court must give an unambiguous statute effect as written – unambiguous statutes

leave no room for statutory construction. See V.P. Clarence Co. v. Colgate, 115 N.M. 573, 575-76,

855 P.2d 562, 564-65 (1993). When, however, a statute's wording is ambiguous, creates

consequences that the legislature could not have intended, or leads to conclusions that are unjust or

nonsensical, a court may look to purpose, legislative history, and the circumstances surrounding the

statute's enactment to determine legislative intent. See Inv. Co. v. Reese, 117 N.M. 655, 658, 875

P.2d 1086, 1089 (1994). The language of remedial statutes should be interpreted liberally to further

-6-

their objectives.  See <u>Romero v. Dairyland Ins. Co.</u>, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990).

### N.M. STAT. § 66-5-301 & N.M. CODE R. § 13.12.3.9

Provisions (A) and (C) of § 66-5-301, in relevant part, state:

A.  No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico <u>unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy,</u> for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom, according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.

\* \* \* \*

C.  [T]he named insured shall have the right to reject uninsured motorist coverage as described in Subsections A and B of this section; provided that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer.

N.M. Stat. § 66-5-301(A) & (C)(emphasis added).  Regulation 13.12.3.9, which accompanies and elaborates § 66-5-301, provides: "The rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 NMSA 1978 must be endorsed, attached, stamped, or otherwise made a part of the policy of bodily injury and property damage insurance."  N.M. Code R. § 13.12.3.9.

The New Mexico Supreme Court has recognized that § 66-5-301 "embodies a public policy of New Mexico to make uninsured motorist coverage a part of every automobile liability insurance

policy issued in this state, with certain limited exceptions," and that the statute is "intended to expand

insurance coverage and to protect individual members of the public against the hazard of culpable

uninsured motorists." Romero v. Dairyland Ins. Co., 111 N.M. at 156, 803 P.2d at 245. Based upon

those observations, the New Mexico Supreme Court considers § 66-5-301 a  remedial statute and,

thus, maintains that it be liberally interpreted to further its purpose, construing exceptions to UM

coverage strictly to protect the insured. See Romero v. Dairyland Ins. Co., 111 N.M. at 156, 803

P.2d at 245.

         The New Mexico Supreme Court has noted that an insured may reject UM coverage, but that

such rejection must satisfy the applicable regulations. See id. To be valid, a rejection of UM

coverage must be made a part of the policy by endorsement on the declarations sheet, by attachment

of the written rejection to the policy, or by some other means that makes the rejection a part of the

policy so as to clearly and unambiguously call to the insured's attention that UM coverage has been

waived. See id. With respect to the regulation requiring that the rejection be made a part of the

policy delivered to the insured, the New Mexico Supreme Court has stated:

> [Regulation 13.12.3.9] ensure[s] that the insured has affirmative evidence of the
> extent of coverage. Upon further reflection, consultation with other individuals, or
> after merely having an opportunity to review one's policy at home, an individual may
> well reconsider his or her rejection of uninsured motorist coverage. Providing
> affirmative evidence of the rejection of the coverage comports with a policy that any
> rejection of the coverage be knowingly and intelligently made. Any individual
> rejecting such coverage should remain well informed as to that decision. We find that
> the regulation of the superintendent of insurance furthers a legislative purpose to
> provide for the inclusion of uninsured motorist coverage in every automobile liability
> policy unless the insured has knowingly and intelligently waived such coverage.

Romero v. Dairyland Ins. Co., 111 N.M. at 156-57, 803 P.2d at 245-46. Based upon that assessment

of  § 66-5-301 and N.M. Code R. § 13.12.3.9, the New Mexico Supreme Court has held that, unless

the named insured rejects UM coverage in a manner consistent with statutory and administrative requirements, UM coverage shall be read into an insured's policy regardless of the parties' intent or the fact that a premium has not been paid. See Kaiser v. DeCarrera, 1996-NMSC-050, ¶ 1, 122 N.M. 221, 223, 923 P.2d 588, 590 (quoting Romero v. Dairyland Ins. Co., 111 N.M. at 155, 803 P.2d at 244). In Kaiser v. DeCarrera, the New Mexico Supreme Court ruled that a valid rejection of UM coverage did not take place and, therefore, read it into a policy. The plaintiff had signed a rejection as part of the application for insurance, and the insurance company sent an amended policy reflecting such to the address on the application that was returned to sender. The New Mexico Supreme Court found that the plaintiff was never actually provided a policy with the rejection included, and that, as a result, UM coverage should be read into the policy.

The New Mexico Court of Appeals has also held that, because the purpose of § 66-5-301 is to protect an insured as if the uninsured motorist had liability insurance, a policy's liability coverage dictates the bounds of its UM coverage. See State Farm Mut. Auto. Ins. Co. v. Marquez, 2001-NMCA-053, ¶ 7, 130 N.M. 591, 593, 28 P.3d 1132, 1134. In determining the geographic bounds of a policy's UM coverage, the Court of Appeals ruled:

> [W]e conclude that the legislature intended for uninsured motorist coverage to apply in the same amounts and in the same territory as a particular policy provides for liability coverage. Section 66-5-301 refers to liability coverage as the measure of a policy's requirements for uninsured motorist coverage, recognizing that an insured may desire to purchase a policy that provides greater protection than is required by law (stating that uninsured motorist coverage must be provided "in minimum limits . . . as set forth in [the Mandatory Financial Responsibility Act] and such higher limits as may be desired by the insured"). Given that the purpose of Section 66-5-301 is to protect an insured as if the uninsured motorist had liability coverage, and that the amount of uninsured motorist coverage depends on the amount of liability coverage, we conclude that the legislature also intended that the geographical scope of uninsured motorist coverage depends on and must be equal to the scope of liability coverage.

State Farm Mutual Auto. Ins. Co. v. Marquez, 2001-NMCA-053, ¶ 7, 130 N.M. at 593, 28 P.3d at 1134.

## LAW REGARDING THE APPLICATION OF RULINGS RETROACTIVELY AND PROSPECTIVELY

The New Mexico Supreme Court has held that it is in its power to give a decision prospective or retroactive application without offending constitutional principles.  See Beavers v. Johnson Controls World Servs., Inc., 118 N.M. 391, 396-97, 881 P.2d 1376, 1381-82 (1994).  The New Mexico Supreme Court maintains that it has the authority to apply a new rule prospectively – "whether the rule is derived from overruling a past precedent or fashioning a new precedent – even though the decision announcing the new rule has already been applied retroactively to the conduct of the litigants in the case in which the rule was announced." Id. at 397, 1382.  The New Mexico Supreme Court has established a presumption of retroactivity for new rules imposed by judicial decision in civil cases.  See id. 398, 1383.

"As with the converse presumption of prospectivity in the legislative arena, the retroactivity presumption for judicial decisions can be overcome by an express declaration, in the case announcing the new rule, that the rule is intended to operate with modified or selective (or even, perhaps, pure) prospectivity." Id.  In deciding whether to override the presumption of retroactivity and issue a rule with prospective effect, the New Mexico Supreme Court considers the following factors: (i) does the decision to be applied prospectively establish a new principle of law, either by overruling clear past precedent on which litigants have relied, or by deciding an issue of first impression whose resolution has not been foreshadowed; (ii) does prospective operation, taking into account the rule in question's prior history, purpose, and effect, further or retard its operation; and (iii) does the weight of inequity

-10-

and hardship that retroactive application imposes counsel prospectivity.  See id.

**LAW REGARDING CERTIFICATION TO THE NEW MEXICO SUPREME COURT**

Federal courts have the option of determining what a state court would do if confronted with the same issue, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), or of certifying the question to the state appellate court for review, see Allstate v. Stone, 116 N.M. 464, 465, 863 P.2d 1085, 1086 (1993)("This matter comes before us by way of certification from the United States District Court for the District of New Mexico.").  See Lehman Bros. v. Schein, 416 U.S. 386, 390-91 (1974)("The decision to certify a question to the state supreme court 'rests in the sound discretion of the federal court.'").  Pursuant to N.M. Stat. § 39-7-4, the New Mexico Supreme Court may answer questions that the federal district court certifies to it if they involve propositions of New Mexico law that may be determinative of the matter before the certifying court and there are no controlling precedents from New Mexico appellate courts.  See Swink v. Fingado, 115 N.M. 275, 276, 850 P.2d 978, 979 n.1 (1993); Schlieter v. Carlos, 108 N.M. 507, 508, 775 P.2d 709, 710 (1989).

**ANALYSIS**

The Court believes that if the New Mexico Supreme Court were presented with this issue it would find that New Mexico law requires insurers to offer UM coverage at least equivalent to what the statute requires and up to the amount of liability coverage contained within a policy. The Court also believes that the New Mexico Supreme Court would find that, if an insured rejects UM coverage at the level of liability coverage, the insurer is required to obtain a signed, written rejection and include it within the policy in some fashion.  Moreover, the Court concludes that, if the New Mexico Supreme Court were presented with this issue, it would find that an insurer's failure to do such

-11-

requires the Court to read into a policy UM coverage equal to liability coverage.  Further, the Court believes the New Mexico Supreme Court would order that its rulings on this matter apply retroactively to the parties involved.  As such, the Court will not certify any of the issues before it to the New Mexico Supreme Court and will grant the Defendant's Motion for Summary Judgment. Finally, the Court concludes that the New Mexico Supreme Court would recognize that Caden does not claim any medical coverage under Policy I, that the parties have reached settlement under Policy II and that there are no outstanding issues involving that policy, and that the parties agree that Farm Bureau will be entitled to offsets with respect to liability payments made to or on behalf of Caden.

**I.      NEW MEXICO LAW REQUIRES THE OFFER AND WRITTEN REJECTION OF UM COVERAGE UP TO THE AMOUNT OF LIABILITY COVERAGE.**

The plain language of § 66-5-301 and regulation 13.12.3.9, when read in conjunction with the decisions of the New Mexico Supreme Court discussing the scope, requirements, and policy underlying § 66-5-301 and regulation 13.12.3.9, leads the Court to find that New Mexico law requires an insurer to offer UM coverage up to liability coverage limits, to obtain a signed, written rejection of that level of coverage if the insured does not desire it, and to include such rejection in the insured's policy in some manner.

The Court reads § 66-5-301(A) and (C) as providing that no automobile liability insurance policy should be issued in New Mexico without also offering consumers UM coverage ranging from a minimum of $10,000 per property item/$25,000 per person/$50,000 per occurrence, see N.M. Stat. § 66-5-215, to a maximum equal to their liability coverage limits, see N.M. Stat. 66-5-301(A) & (C). The Court arrives at that conclusion by reading  § 66-5-301(A)'s "unless [UM] coverage is provided . . . in minimum limits  . . . as set forth in Section 66-5-215 NMSA 1978 and such higher limits as may

be desired by the insured, . . . up to the limits of liability specified . . . in the insured's policy," in combination with § 66-5-301(C)'s "the named insured shall have the right to reject uninsured motorist coverage as described in Subsection A,"  N.M. Stat. 66-5-301(A) & (C).  It is logical that, to satisfy the consumer's "right to reject," the insurer must offer such coverage.

When that offer requirement is combined with regulation 13.12.3.9, which § 66-5-301(A) expressly states that UM coverage should be made available "according to the rules and regulations promulgated by . . . the superintendent of insurance," N.M. Stat. 66-5-301(A), the Court finds that, to be valid, a consumer's rejection of UM coverage, whether at statutory minimum or liability coverage levels, must be signed, written, and "attached, stamped, or otherwise made a part of the policy."  N.M. Code R. § 13.12.3.9.

The New Mexico Supreme Court's opinions in Romero v. Dairyland Insurance Company, Kaiser v. DeCarrera, which reaffirmed the New Mexico Supreme Court's holding in Romero, and Montano v. Allstate Indemnity Company, 2004-NMSC-020, 135 N.M. 681, 92 P.3d 1255, support that conclusion.  In Romero v. Dairyland Insurance Company, the New Mexico Supreme Court noted that § 66-5-301 is to be liberally interpreted to implement its purpose of expanding insurance coverage to protect members of the public against the hazard of culpable uninsured motorists, and that regulation 13.12.3.9 ensures that the insured has affirmative evidence of the extent of coverage so that they can reflect upon and reconsider such.  See Romero v. Dairyland Ins. Co., 111 N.M. 154, 156, 803 P.2d 243, 245.  See also Kaiser v. DeCarrera, 1996-NMSC-050, ¶¶ 8-9, 122 N.M. at 223, 923 P.2d at 590.  The Romero Court, considering the plain language of § 66-5-301 and of regulation 13.12.3.9, and those provisions' underlying policy rationales, held:

An insured may reject uninsured motorist coverage, but the rejection must satisfy the

> regulations promulgated by the superintendent of insurance.  The rejection must be
> made a part of the policy by endorsement on the declarations sheet, by attachment of
> the written rejection to the policy, or by some other means that makes the rejection
> a part of the policy so as to clearly and unambiguously call to the attention of the
> insured the fact that such coverage has been waived.

Romero v. Dairyland Ins. Co., 111 N.M. at 156, 803 P.2d at 245.  See Kaiser v. DeCarrera, 996-

NMSC-050, ¶¶ 8-9, 122 N.M. at 223, 923 P.2d at 590.

In Montano v. Allstate Indemnity Company, the New Mexico Supreme Court determined,

based upon § 66-5-301(C) and Romero v. Dairyland Insurance Company, that stacking, a judicially

created doctrine read into § 66-5-301, could be validly rejected only in writing.  See 2004-NMSC-

020, ¶ 19, 135 N.M. at 686, 92 P.3d at 1260.   Following the special concurrence in United States

Fidelity and Guaranty Company v. Ferguson, 698 So.2d 77 (Miss. 1997), the New Mexico Supreme

Court stated: "[S]tacked coverage [is coverage] . . . to which the insured is entitled by default, unless

the insurance company undertakes the burden of obtaining a separate, comprehensible, and written

disclaimer for stacking."  Montano v. Allstate Indemnity Co., 2004-NMSC-020, ¶ 18, 135 N.M. at

686, 92 P.3d at 1260.  Presumably, if the New Mexico Supreme Court is willing to extend Romero's

rejection requirement to a judicially created element of UM coverage, it would require the same with

respect to an aspect of § 66-5-301 that exists within the statute's plain language – that UM coverage

be offered to consumers up to liability coverage limits.

In reaching its position, this Court also acknowledges the New Mexico Court of Appeals'

ruling in State Farm Mutual Automobile Insurance Company v. Marquez, 2001-NMCA-053, 130

N.M. 591, 28 P.3d 1132, and the decision of the Honorable James Hall, New Mexico First Judicial

District Court Judge, in Klecan v. American National Property and Casualty Company, D-101-CV-

020011705 (First N.M. Dist. Ct. 2001).  In Marquez, the Court of Appeals determined that the

-14-

geographical scope of UM coverage must be equal to the scope of liability coverage, and, in doing so, stated that "[s]ection 66-5-301 refers to liability coverage as the measure of a policy's requirements for uninsured motorist coverage, recognizing that the insured may desire to purchase a policy that provides greater protection than is required by law" and "that the amount of uninsured motorist coverage depends on the amount of liability coverage."  2001-NMCA-053, ¶ 7, 130 N.M. at 593, 28 P.3d at 1134.  By firmly establishing that liability coverage sets the parameters of UM coverage, the Marquez court's opinion strongly indicates that the New Mexico judiciary views including limits up to liability coverage in a UM coverage offer as fundamental.

Employing like reasoning in Klecan, Judge Hall found that, pursuant to § 66-5-301, automobile insurance companies have a duty to offer UM limits equal to liability coverage limits and to ascertain whether there has been a knowing rejection of UM limits equal to liability limits.  Hall held:

> [T]he only way to effectively implement the legislative intent of requiring UM coverage with limits equal to liability coverage is to place a duty on the insurance company to inform an individual of that obligation, that right, and to affirmatively offer that coverage to an insured.

> [T]he Legislature has chosen statutorily to require that UM coverage be made available up to the liability limits, that the only way to effectively implement that is to place a duty on the insurance company to make that offer and to determine whether there has been a knowing rejection of that offer.

Janet Santillanes, Stacking of Uninsured Motorist Coverage After Montano v. Allstate, XXXIV The New Mexico Trial Lawyer, 109, 137 (September/October 2004)(quoting Klecan v. Am. Nat'l Prop. and Cas. Co., D-101-CV-020011705.  Taking Judge Hall's reasoning, together with the ruling in Romero v. Dairyland Insurance Company,  suggests that the New Mexico judiciary reads § 66-5-301 as requiring UM coverage to be offered in an amount equal to liability coverage and as requiring that

a rejection of such must be signed, written, and attached, stamped, or otherwise made a part of the policy.

The Court, moreover, recognizes that courts in several other states have reached similar conclusions to the one it reaches here on this issue.  In interpreting their states' UM statutes, the Supreme Court of Delaware and the Courts of Appeals in North Carolina, South Carolina, and Oregon have all done so.  See Mason v. United Servs. Auto. Ass'n, 697 A.2d 388, 391, 393-94 (Del. 1997)(ruling that, pursuant to Delaware's UM statute, the insurer has an affirmative duty to offer UM coverage to the insured above the statutory minimum amount and up to the liability coverage level); Hendrickson v. Lee, 119 N.C. App. 444, 450, 459 S.E.2d 275, 279 (N.C. Ct. App. 1995)(stating that, under North Carolina's UM statute, UM coverage must be in an amount equal to liability limits unless the insured validly rejects that amount of coverage in writing); Dewart v. State Farm Mut. Auto. Ins. Co., 296 S.C. 150, 152-53, 370 S.E.2d 915, 916 (S.C. Ct. App. 1988)(holding that South Carolina's UM statute requires the insurer to affirmatively offer UM  coverage up to the limits of the insured's liability coverage); Blizzard v. State Auto. Ins. Co., 86 Or. App. 56, 60, 738 P.2d 983, 985 (Or. Ct. App. 1987)(maintaining that the UM statute in Oregon imposes an affirmative duty on insurers to "communicate to their insureds the availability of one or more options of uninsured motorist coverage up to the limits provided under the liability coverage in their policies.").

Further, in considering whether § 66-5-301 requires insurers to offer UM coverage equivalent to liability limits and whether that statute and regulation 13.12.3.9 require insurers to obtain signed, written rejections if insureds do not desire such, the Court notes that many auto insurance companies providing coverage in New Mexico already dedicate space in their applications and policies for both expressly offering and rejecting UM coverage at liability limits, ostensibly because they believe that

-16-

§ 66-5-301 requires them to do so.  See Defendant's Memo in Support, Exhibit A-Exhibit D.

Additionally, the Court believes that the statutory scheme  in this case is distinguishable from those at issue in the cases Farm Bureau cites, Mann v. Farmers Insurance Company, 761 P.2d 460 (Okla. 1988), and General Accident Insurance Company of America v. Powers, Bolles, Houlihan and Hartline, Inc., 251 Conn. 56, 738 A.2d 168 (Conn. 1999),  to support its argument that if a rejection of UM coverage at liability limits is required, which Farm Bureau contests, an application showing the election of UM limits along with a declarations page reflecting the purchased applicable limits are sufficient to satisfy that requirement.   In Mann v. Farmers Insurance Company, the Oklahoma Supreme Court addressed Oklahoma's UM coverage statute.  That statute provided, in relevant part, that:

> The policy . . . shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners and operators of uninsured motor vehicles . . . .  Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting [statutory minimum requirements] . . . provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured.
>
> * * * *
>
> The named insured shall have the right to reject such uninsured motorist coverage in writing, and . . . such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

761 P.2d at 463 (quoting 36 O.S. 1981 §§ 3636(B) & (F)).  The insured in Mann argued that the insurer's  failure to obtain a written rejection of UM coverage at liability limits should result in such limits being read into the policy as the limits of UM coverage.  See id. at 462-63.  The Oklahoma Supreme Court rejected that argument and held that the purchase of a policy providing UM coverage

at the statutory minimum limits and higher liability limits was sufficient to satisfy the UM statute's written rejection requirements.[1]  See id. at 465-66.

Similarly, in General Accident Insurance Company of America, the Supreme Court of Connecticut held that an application form with liability limits higher than the UM limits constituted a valid written rejection of an insured's right to UM coverage equal in amount to liability coverage.  See 251 Conn. at 58, 738 A.2d at 169; Gen. Accident Ins. Co. of Am. v. Powers, Bolles, Houlihan, and Hartline, Inc., 50 Conn. App. 701, 710-11, 719 A.2d 77, 81-83 (Conn. App. 1998).  The UM coverage statute at issue in that case, in pertinent part, stated: "every . . . policy issued or renewed . . . shall provide uninsured motorist coverage within limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured request in writing a lesser amount."   Gen. Accident Ins. Co. of Am. v. Powers, Bolles, Houlihan, and Hartline, Inc., 50 Conn. App. at 703, 719 A.2d at 79.

In finding that the New Mexico UM coverage regime is distinguishable from those taken up in Mann and General Accident Insurance Company of America, the Court notes that there is no evidence that the UM coverage statutes addressed in those cases were to be read in conjunction with another statute or regulation articulating the manner in which valid rejections were to be made.  In contrast, the New Mexico UM coverage statute is to be read together with regulation 13.12.3.9, which provides that a rejection of UM coverage as described in the statute must be signed, written, and attached, stamped, or otherwise made a part of the policy.  See N.M. Code R. § 13.12.3.9.

---

[1] The Court notes Judge Alma Wilson's dissenting opinion in Mann v. Farmers Insurance Company, 761 P.2d at 466-68.  The Court found Judge Wilson's dissent well reasoned and forceful. Ultimately, however, the Court chooses not to adopt the dissent's position, because its reasoning is based on Oklahoma's UM coverage scheme, which, unlike New Mexico's, does not include a separate regulation outlining what is required for a written rejection to be valid.

Moreover, the New Mexico Supreme Court has held that regulation 13.12.3.9 requires that a rejection "be made a part of the policy by endorsement on the declarations sheet, by attachment of the written rejection to the policy, or by some other means that makes the rejection a part of the policy so as to clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived."  Kaiser v. DeCarrera, 996-NMSC-050, ¶¶ 8-9, 122 N.M. at 223, 923 P.2d at 590.

Illustrating that strict compliance with regulation 13.12.3.9, as New Mexico courts have interpreted that regulation, is required, the New Mexico Supreme Court, in Kaiser v. DeCarrera, ruled that a valid rejection did not occur where an insured signed a rejection as part of the application for insurance and where the insurance company sent an amended policy reflecting such to the address on the application that was returned to sender, because the insured never actually received a policy with the rejection included.  See 996-NMSC-050, ¶¶ 11-17, 122 N.M. at 224-25, 923 P.2d at 591-92. Accordingly, the Court believes that the inclusion of regulation 13.12.3.9 in New Mexico's UM coverage scheme distinguishes that scheme from those that were in place in Oklahoma and Connecticut when Mann and General Accident Insurance Company of America were decided.  The Court also finds it noteworthy that the legislatures in Oklahoma and Connecticut amended their states' UM coverage statutes to require specific written rejection of UM coverage at liability limits in response the their Supreme Courts' rulings in Mann and General Accident Insurance Company of America. See Okla. Stat. tit. 36 § 3636; Conn. Gen. Stat. § 38a-336; Mann v. Farmers Ins. Co., Inc., 761 P.2d at 468 (Wilson, J. dissenting)(citing Kimbrell v. Great Am. Ins. Co., 420 So.2d 1086 (Fla. 1982), and noting that Florida's legislature amended its UM statute to specifically require written rejection of higher limits of UM coverage in response to the Supreme Court of Florida's

determination that the previous UM coverage statute did not require such).

Considering the foregoing, the Court concludes that, if the New Mexico Supreme Court were presented with this issue, it would rule that New Mexico law requires an insurer to offer UM coverage up to liability coverage limits, to obtain signed, written, and specific rejection of that level of coverage if the insured does not desire it,[2] and to include such rejection in the insured's policy in some manner.

## II.   NEW MEXICO LAW REQUIRES THAT STATUTORILY MANDATED ELEMENTS OF UM COVERAGE THAT ARE NOT VALIDLY REJECTED BE READ INTO AN INSURANCE POLICY.

The Court believes that, if the New Mexico Supreme Court confronted this issue, it would find that New Mexico law requires that UM coverage equal to liability limits be read into an insurance policy where the insured did not validly reject UM coverage in amounts equivalent to liability limits. The Court bases it belief on the New Mexico Supreme Court's decision in Romero v. Dairyland Insurance Company, which stated: "[U]nless the named insured rejects [UM] coverage in a manner consistent with the requirements imposed by the superintendent of insurance, uninsured motorist coverage will be read into the insured's automobile insurance policy regardless of the intent of the parties or the fact that a premium has not been paid." 111 N.M. at 155, 803 P.2d at 244. See Kaiser v. DeCarrera, 996-NMSC-050, ¶ 1, 122 N.M. at 223, 923 P.2d at 590. The Court finds that Romero's "read in" rule is applicable in cases where it is held that an insured did not reject UM

---

[2] The Court gave some consideration to the fact that this might be a factual issue in certain situations. No one has argued, however, that New Mexico courts would make this a factual issue for trial, or that it is a factual issue in this case. The Court also does not believe that it is a factual issue in this case, or that New Mexico courts would leave the issue for trial. New Mexico courts appear to prefer bright-line rules in this area that avoid underlying factual determinations. See Phoenix Indem. Ins. Co. v. Pulis, 2000-NMSC-023, 129, N.M. 395, 9 P.3d 639 (2000).

coverage in amounts equivalent to liability limits in an appropriate fashion, and that, in such circumstances, UM coverage at liability limits should be read into a policy.  In reaching its conclusion, the Court embraces the spirit of New Mexico Supreme Court precedent and joins the holdings that several appellate courts in other jurisdictions have taken.  See Romero v. Dairyland Insurance Company, 111 N.M. at 155, 803 P.2d at 244; Kaiser v. DeCarrera, 996-NMSC-050, ¶ 1, 122 N.M. at 223, 923 P.2d at 590; Mason v. United Servs. Auto. Ass'n, 697 A.2d at 394 (holding that an insured's policy should be reformed to reflect UM coverage at liability levels because the insurer failed to adequately offer UM coverage at limits equal to liability limits); Dewart v. State Farm Mut. Auto. Ins. Co., 296 S.C. at 153, 370 S.E.2d at 916 ("If the insurer fails to comply with its statutory duty to make a meaningful offer to the insured, the policy will be reformed, by operation of law, to include [UM] coverage up to the limits of liability insurance carried by the insured."); Blizzard v. State Auto. Ins. Co., 86 Or. App. at 61, 738 P.2d at 985 ("[T]he appropriate remedy for [insurer]'s failure to comply with its statutory duty is to read into the insurance contract the coverage which [insurer] should have offered."); Kuchenmeister v. Ill. Farmers Ins. Co., 310 N.W.2d 86, 88 (Minn. 1981)("[W]hen the trial court determines that the statutorily mandated offer of insurance has not been made, that coverage is implied in law as included in the insured's policy at the time of the accident.").

## III.   NEW MEXICO LAW DOES NOT REQUIRE THAT THE COURT'S FINDINGS IN THIS CASE BE PROSPECTIVELY APPLIED.

In some respects, it is odd for Farm Bureau to bring its case in federal court, ask federal court to determine New Mexico law, and to then ask the federal court to make its ruling prospective.  The prospectivity ruling seems to be one particularly in the purview of the New Mexico Supreme Court. See Hulin v. Fibreboard Corp., 178 F.3d 316, 317-318 (5th Cir. 1999)(holding that, under the Erie

doctrine, the Louisiana Supreme Court's rules concerning retrospective and prospective application of decisions based on the common law apply in diversity actions based on Louisiana law). Nevertheless, the Court must make some determination whether the Court's holdings apply to Caden. The Court finds that they do.  The rule that the New Mexico Supreme Court established in Beavers v. Johnson Controls World Services, Inc. controls whether the Court's holding in this case is to be retroactively or prospectively applied.  Judicial decisions in New Mexico are presumed to be retroactive.  See Beavers v. Johnson Controls World Services, Inc., 118 N.M. at 398, 881 P.2d at 1383.  That presumption may be overridden if the three factors articulated in Beavers weigh in favor of prospectivity.  See id.  Here, those factors do not support applying the Court's ruling only prospectively.

First, the Court's decision does not establish a new principle of law – it does not overrule past precedent on which litigants have relied and it does not decide an issue the resolution of which has not been foreshadowed.  See id.  The Court's decision is rooted in the language of § 66-5-301, regulation 13.12.3.9, and the New Mexico Supreme Court's rulings on those provisions' operation and application.  Moreover, many automobile insurance companies are presently and have been using forms that would comply with the Court's findings.  See Defendant's Memo in Support, Exhibit A-Exhibit D.

Second, prospective operation would not further New Mexico's UM coverage scheme's history, purpose, and effect.  See Beavers v. Johnson Controls World Services, Inc., 118 N.M. at 398, 881 P.2d at 1383.  The New Mexico Supreme Court considers New Mexico's UM coverage regime to be remedial and has expressed the view that the regime should be interpreted broadly and liberally in favor of the consumer in several opinions.  See, e.g., Romero v. Dairyland Ins. Co., 111 N.M. at

156, 803 P.2d at 245.  Limiting the Court's holding to prospective application in this case would, if anything, retard the UM coverage scheme's purpose and effect with respect to Caden and his parents, and discount the validity of the New Mexico Supreme Court's determination of the plain language of and policy rationales underlying § 66-5-301and regulation 13.12.3.9, upon  which many insurers and insureds appear to have been relying.  See Defendant's Memo in Support, Exhibit A-Exhibit D.

Finally, the weight of inequity and hardship that retroactive application would impose here does not counsel prospectivity.  See Beavers v. Johnson Controls World Services, Inc., 118 N.M. at 398, 881 P.2d at 1383.  Arguably, § 66-5-30l, regulation 13.12.3.9, the prior decisions of the New Mexico Supreme Court, and the practices of other auto insurance companies should have put Farm Bureau on notice that its procedures concerning rejection of UM coverage were inadequate.  That, combined with the statutory and regulatory protections that Caden would effectively be required to forfeit if the Court's decision were applied prospectively, points against prospectivity in this instance.

Farm Bureau contends that the Court should look to Montano v. Allstate Indemnity Company and, based upon that case, apply its ruling prospectively.  See 2004-NMSC-020, ¶¶ 17, 21, 135 N.M. at 686, 687, 92 P.3d at 1260, 1261; Plaintiff's Response at 10-11.  The Court notes that Montano involved the extension of the judicially created doctrine of stacking, in light of the New Mexico Supreme Court's decisions regarding the operation of § 66-5-30l and regulation 13.12.3.9.  See id. In this case, the Court's holding is not, nor is it based upon, a heretofore unarticulated expansion of a common-law rule.  Rather, the Court's decision is grounded in the plain language of the statutory and regulatory provisions, as the New Mexico Supreme Court has consistently interpreted them, that comprise New Mexico's UM coverage regime.  Montano v. Allstate Indemnity Company, therefore, does not control here.

-23-

This case presents no genuine issues of material fact.  As such, summary judgment is appropriate.  New Mexico state law dictates that the Court find in favor of Caden in this case.  New Mexico state law requires: that insurers offer UM coverage at least equivalent to what statute requires and up to the amount of liability coverage contained within a policy; that, if an insured rejects UM coverage at the level of liability coverage, the insurer obtain a signed, written rejection and include it within the policy in some fashion; and that an insurer's failure to do such  requires that UM coverage equal to liability coverage be read into the policy.  As such, Farm Bureau was required to offer UM coverage equal to liability limits and to obtain a signed, written rejection from the Jamesons if they did not desire such, and include it in the policy in some manner.  Because Farm Bureau did not do so, the Court will read into the Jamesons' policy UM coverage limits equal to their liability coverage limits.  Further, the Court will apply its decision retroactively with respect to the parties.

Farm Bureau does not ask the Court to certify the question to state court, it filed its action here, and it opposes Caden's alternative request for certification.  Caden only asks for certification if the Court finds against him on the merits.  Because the Court agrees with Caden on the resolution of the issues, the Court sees no need for certification.  Moreover, the Court believes that the state of New Mexico law is sufficient for it to make a determination in this case.  Accordingly, it will exercise its discretion and not certify any questions to the New Mexico Supreme Court.

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is granted.  In addition, the Court declares: (i) that Defendant Caden Jameson does not have any medical coverage under Policy I; (ii) that the parties have reached settlement under Policy II and there are thus no outstanding issues involving that policy; and (iii) that Farm Bureau will be entitled to offsets with respect to liability payments made to or on behalf of Caden.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Ronald J. Childress
Elaine R. Dailey
Klecan & Childress
Albuquerque, New Mexico

    *Attorneys for Plaintiff*

Mark Stout
Stout & Stout
Hobbs, New Mexico

    *Attorney for Defendant*